UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CANDY SAUNDERS,

                           Plaintiff,                                  <u>DECISION AND ORDER</u>

                                                                        14-CV-6299L

                           v.

CAROLYN W. COLVIN,

                           Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

This appeal follows a lengthy cycle of prior decisions and remands. On January 25, 2008, plaintiff filed an application for Supplemental Security Income benefits under Title II of the Social Security Act, alleging an inability to work since January 1, 2001. (T. 12). [1] Her application was initially denied. Plaintiff requested a hearing, which was held on January 7, 2010 before Administrative Law Judge ("ALJ") F. Patrick Flanagan. ALJ Flanagan issued a decision on May 28, 2010, concluding that plaintiff was not disabled under the Social Security Act. Plaintiff appealed, and on March 2, 2012, the Appeals Council vacated the decision and

---

1 "T." refers to the transcript of the administrative record.

remanded the matter for further proceedings.  After a second hearing, ALJ Flanagan issued a second unfavorable decision on November 28, 2012.  Plaintiff appealed, and on April 12, 2013, the Appeals Council vacated the second decision, directed the reassignment of the matter to a different ALJ, and remanded the case for further proceedings, including the obtainment of additional evidence concerning the plaintiff's physical and mental impairments, further consideration of treating source opinions, and consultation with a vocational expert.  A third hearing was held via videoconference on August 1, 2013 before ALJ Robert E. Gale.  On September 27, 2013, ALJ Gale issued a decision concluding that plaintiff was not disabled under the Social Security Act.  (T. 12-26).  That decision became the final decision of the Commissioner when the Appeals Council denied review on April 17, 2014.  (T. 1-3).

The plaintiff has moved (Dkt. #10), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).  For the reasons set forth below, the Commissioner's decision is reversed, and the matter is remanded for the calculation and payment of benefits.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  *See* 20 CFR §§404.1509, 404.1520.  If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, he then examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment does so, and has continued for the required duration, the claimant is disabled.  If not, analysis proceeds and the ALJ determines

the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 CFR §404.1520(e), (f).  If the claimant's RFC permits her to perform relevant jobs she has done in the past, she is not disabled.  If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).  *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'"  *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Nonetheless, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

ALJ Gale's decision recites detailed findings of fact and articulates the bases upon which they rest. Upon careful review of the complete record, I believe that the ALJ failed to apply the correct legal standards and/or to comply with the directives of the Appeals Council remanding the matter (T. 223-224), and that his finding that plaintiff is not totally disabled is not supported by substantial evidence.

The ALJ summarized plaintiff's medical records in detail. Plaintiff's treatment records and lists of diagnoses are unusually lengthy – approaching 2,000 pages – and they reflect that plaintiff has been prescribed between 30 and 40 prescription medications at any given time to treat her various diagnoses, consisting primarily of asthma, sleep apnea, degenerative disc disease of the lumbar spine, obesity, bipolar disorder, personality disorder, and borderline intellectual functioning. The ALJ determined that these conditions together constituted a severe impairment not meeting or equaling a listed impairment, but concluded that plaintiff, then a forty-three-year old woman with a high school education and no past relevant employment, was not totally disabled, due to the his finding at step five that positions existed in the economy that plaintiff could perform, including cleaner (housekeeping), office helper, mail clerk, collator and assembler.

## I. Plaintiff's Exertional Limitations

In determining plaintiff's RFC, the ALJ considered the medical record with regard to plaintiff's exertional limitations, which included treatment notes for, among other things, controlled asthma and intermittent low back pain, obesity and sleep apnea. Other conditions

4

mentioned in plaintiff's treatment notes, but which the ALJ determined were not sufficiently documented to show they presented or contributed to a "severe" impairment, included incidents of arm, hand, wrist, neck, knee, foot, hip, abdominal and chest pain, edema, hypertension, gastroesophageal reflux disease ("GERD"), anemia, irritable bowel syndrome ("IBS"), and migraine headaches.

Based on this evidence, and on objective testing of plaintiff's extremities, the ALJ determined that plaintiff retained the RFC to perform light work, with the following limitations: standing and walking for up to two hours in an eight-hour workday, no balancing or climbing ladders or scaffolds, no work at unprotected heights, and no more than occasional exposure to humidity, wetness, respiratory irritants, extreme temperatures and vibrations.

Plaintiff argues that in determining plaintiff's exertional limitations, the ALJ failed to properly consider the effect of her IBS on her ability to perform work. I concur. The plaintiff's medical records consistently reflect treatment for IBS and complaints of gastrointestinal issues and diarrhea, and her testimony at all three hearings describes symptoms commonly associated with the condition, including the frequent, and typically urgent, need to use a restroom. When vocational expert Esperanza Distefano was asked at plaintiff's most recent hearing whether positions existed in the economy that could be performed by someone who needed to frequently stop work and visit a restroom, the VE answered, "I think…" and speculated that a housekeeper might have more frequent access to a restroom because she would be working in a home, but stated that the other positions she had identified could not be performed. (T. 172-174).

I find that the ALJ's failure to consider the impact of plaintiff's IBS when determining her RFC was reversible error, and that the VE's apparent speculation concerning the restroom

availability associated with the housekeeping position is insufficient to sustain the Commissioner's burden that there were positions in the economy that plaintiff could perform. Nonetheless, because I find below that the record persuasively establishes disability once the opinion of plaintiff's treating psychiatrist is given proper weight, a remand for calculation and payment of benefits – rather than a remand for further consideration – is the proper remedy.

## II.     Plaintiff's Non-Exertional Limitations

In assessing plaintiff's non-exertional limitations, the ALJ explicitly applied what is generally referred to as the "special technique," prescribed for the evaluation of non-exertional impairments in adults at Steps 2 and 3 of the ALJ's analysis. The special technique requires an ALJ to assess four categories of functionality: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition." 20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3). Impairment in the first three categories must be ranked as none, mild, moderate, marked or extreme, and the number of episodes of decomposition must be ranked as none, one, two, or "three or more." The ALJ must document his analysis of the process in order to "reflect application of the technique, and . . . must include a specific finding as to the degree of limitation in each of the functional areas." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (internal quotations omitted). A finding of "mild" or less in the first three categories, coupled with a finding of "none" in the final category and the absence of contrary evidence, directs the conclusion that a claimant's mental impairment is *not* severe. 20 C.F.R. §404.1520a(d)(1). If the finding indicates a greater degree of limitation, the claimant will be deemed to have a severe mental impairment, and if that impairment neither meets nor equals a

listed impairment, the ALJ will proceed to determine the claimant's RFC with regard to non-exertional limitations. 20 C.F.R. §404.1520a(d)(3).

Applying the special technique, the ALJ determined that plaintiff was mildly restricted in activities of daily living, had mild difficulties in social functioning, experienced moderate difficulties in concentration, persistence or pace, and had experienced no episodes of decompensation. (T. 18). Concluding that plaintiff's severe mental impairment did not meet or equal a listed impairment, the ALJ proceeded to Step 4 of the analysis, the determination of plaintiff's RFC, and based on consideration of plaintiff's treatment records, opined that plaintiff had the RFC to perform work with the following nonexertional limitations: ability to understand, carry out and remember simple instructions, with no more than occasional changes in a routine work setting. (T. 19).

Plaintiff argues that the RFC determined by the ALJ should have afforded controlling weight to the opinion of her treating psychiatrist, Dr. Veena Garyali. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship with the claimant; (2) the extent of the treatment relationship; (3) whether there is medical support for the opinion: (4) consistency of the opinion with other evidence of record; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report constitutes reversible

7

error. *See Snell v. Apfel*, 177 F.3d 128,134 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

In opting not to give Dr. Garyali's opinion controlling weight, the ALJ observed that Dr. Garyali's opinion – that plaintiff was unable to markedly limited in her ability to complete a normal workday or workweek, and could be expected to miss more than three workdays per month due to psychiatric issues – was unsupported by any explanation. (T. 24).

Initially, the ALJ does not appear to have considered Dr. Garyali's psychiatric specialty, or her treatment relationship with the plaintiff for bipolar disorder and anxiety disorder, which consisted of regular visits approximately once every two months, beginning in 2010. (T. 143, 1319). The ALJ also largely ignored Dr. Garyali's written addendum explaining the basis for her conclusions, which he found unconvincing because, "[Dr. Garyali] does not indicate how or whether [plaintiff's] lowered stress threshold [caused by bipolar disorder] would actually preclude unskilled work [and] does not discuss how the claimant was able to engage in childcare on a daily basis despite this lowered stress threshold"]. (T. 23-24).

I find the ALJ's explanation for rejecting Dr. Garyali's opinion to be factually insufficient, unsupported by the record, and inconsistent with the instructions of the Appeals Council on remand:

> [ALJ Flanagan] did not grant full weight to Dr. Garyali's opinion . . . stating that it relates more to the claimant's "chaotic family dynamics" rather than any medically determinable impairment. In her February 6, 2013 [addendum], Dr. Garyali indicates that her opinion was based on the claimant's response to stress and any kind of pressure; that the claimant feels overwhelmed; that the claimant's anxiety has continued for many years; that the claimant continues to make poor judgments; and that the claimant's bipolar disorder and anxiety disorder primarily cause the chaotic situations in her life. Consideration of this statement is necessary. (T. 223-224).

Although the ALJ once again dismissed Dr. Garyali's opinion as unsupported, Dr. Garyali did cite specific symptoms relative to plaintiff's bipolar disorder and anxiety or panic disorder that have the effect of rendering her incapable of regular work, including, "a very low threshold for stress… any kind of pressure cause[]s a severe mood dysregulation, where she loses control, feels overwhelmed, and she just cannot think straight…" (T. 1183). Dr. Garyali also explained how plaintiff's bipolar disorder can be expected to make the "stress of going to work… too much" to handle, and noted that the many antidepressants plaintiff has taken "have kept her mood under control, but only at a superficial level." *Id*. These observations and conclusions are consistent with, and supported by, plaintiff's longitudinal psychiatric treatment records with Dr. Garyali. *See* T. 1056 ("[s]he is overwhelmed"); T. 1057 ("[e]xtremely upset… absent-minded, cut her face on a piece of tin"); T. 1326 ("[despite medication, plaintiff] gets angry very easily, and she was throwing things… continued to feel very irritable and depressed…very agitated… She did not feel stable. She again was complaining of feeling very upset and she told [me] that she took an overdose of pills… extremely upset… She was extremely agitated and anxious, could not even listen to me properly because she could not concentrate on anything. This has been her level of functioning ever since. I have been seeing her for over one year now and she gets upset over the smallest things and becomes all nervous and jittery.")

Furthermore, the ALJ's finding that plaintiff was able to adequately perform "childcare" notwithstanding her impairments (apparently based on a reference in the record to plaintiff's daytime care of a granddaughter in 2008, T. 401) reflects a level of functionality that is not otherwise supported by the record. To the contrary, plaintiff's psychiatric treatment records

9

reflect a chaotic and poorly-managed family situation. *See* T. 1051 ("[plaintiff's] grandchildren were taken away from her daughter… kids are in foster care [and plaintiff] is trying to get them… her son is living with his father… in all a big mess… dysfunction[al] family"); T. 1054 ("[plaintiff's] sons are drinking and using. They don't live with her…"); T. 1060 ("[her son] turned her in to CPS because there was… no food. Lots of tension"); T. 1328 ("[he]r son complained about her behavior for neglect and she was getting investigated").

Although the VE in this case was not asked about the effect of plaintiff's expected absenteeism on her employability, there is ample authority that absences of three or more days per month preclude gainful employment, and given the lengthy history of this case and the multiple delays occasioned by two prior reversals and remands by the Appeals Council, the directives of which the Commissioner's most recent decision again fails to apply, the Court does not find it necessary to remand the matter for the purpose of gathering cumulative testimony to establish that fact. *See e.g.*, *Beckers v. Colvin*, 2014 U.S. Dist. LEXIS 113062 at *26 (W.D.N.Y. 2014); *O'Brien v. Colvin*, 2014 U.S. Dist. LEXIS 125258 at *27 (E.D.N.Y. 2014); *Doria v. Colvin*, 2014 U.S. Dist. LEXIS 92456 at *7-*12 (W.D.N.Y. 2014). I find, therefore, that the Commissioner has failed to meet his burden to explain why the opinion of plaintiff's treating psychiatrist was not afforded controlling weight, or to demonstrate that plaintiff can perform any work that exists in the economy. The record is clear that if the opinion of plaintiff's treating psychiatrist controls, there are no jobs in the national economy that plaintiff can perform. Under the circumstances, remand for the calculation and payment of benefits is warranted.

**CONCLUSION**

The Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is denied, and plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted. The Commissioner's decision that plaintiff was not disabled is reversed, and the matter is remanded for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        February 27, 2015